UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

---

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES<br><br>1)<br>FOR AN ORDER AUTHORIZING THE USE OF UNDERCOVER OPERATIONS IN FURTHERANCE OF A CRIMINAL INVESTIGATION and<br><br>2)<br>FOR AN ORDER OF DISCLOSURE AND USE OF PATIENT RECORDS<br><br>IN THE MATTER OF:<br><br>New England Medicine & Counseling Associates | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No:  23-mc-004-AJ

**Filed Under Seal**

---

**UNITED STATES' MOTION TO SEAL AT LEVEL II
ENTIRE MATTER RELATED TO *EX PARTE* ORDERS
PURSUANT TO 42 U.S.C. §§ 290dd-2(b)(2)(c) and 42 C.F.R. §§ 2.66 and 2.67**

In the above captioned case, the United States, by and through Department of Justice Trial Attorneys, Thomas D. Campbell and Patrick J. Queenan, moves to seal at Level II the entire matter related to the underlying application for *ex parte* orders pursuant to 42 U.S.C. § 290dd-2(b)(2)(c) and 42 C.F.R. §§ 2.66 and 2.67 (the "Application"), including this motion, the supporting affidavit, proposed orders, resulting orders, and all associated docket text entries for 180 days, expiring on July 5, 2023.

Under Federal Rule of Criminal Procedure 49.1(d) and Local Rule 83.12(a)(1), the Court has authority to grant this motion.

Based on the facts in this case, as outlined in the Application and in the attached supporting affidavit, such an order sealing the Application and related documents would be appropriate because the Application relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the

1

ongoing investigation. Further, there is reason to believe that notification of the existence or content of the application could cause the destruction of or tampering with evidence, the intimidation of potential witnesses, and otherwise seriously jeopardize the investigation. Moreover, some of the evidence in this investigation is likely stored electronically. If alerted to the investigation, the subjects under investigation could destroy that evidence, including information saved to their personal and business computers and cellular telephones.

WHEREFORE, for all of the foregoing reasons, the Court should grant the attached proposed order.

Date: January 6, 2023                              Respectfully submitted,

JANE E. YOUNG
UNITED STATES ATTORNEY

By: */s/ Thomas Campbell*
    Thomas D. Campbell (MA Bar #703271)
    Patrick J. Queenan (NH Bar #20127)
    Trial Attorneys
    U.S. Department of Justice
    Criminal Division, Fraud Section
    1400 New York Avenue, NW
    Washington, DC 2005
    Telephone: (202) 875-0326
    Thomas.Campbell@usdoj.gov
    Patrick.Queenan@usdoj.gov

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES ) | |
| ) | |
| 1) ) | |
| FOR AN ORDER AUTHORIZING THE USE OF ) | |
| UNDERCOVER OPERATIONS IN FURTHERANCE ) | |
| OF A CRIMINAL INVESTIGATION and ) | Case No: 23-mc-004-AJ |
| ) | |
| 2) ) | |
| FOR AN ORDER OF DISCLOSURE AND ) | **Filed Under Seal** |
| USE OF PATIENT RECORDS ) | |
| ) | |
| IN THE MATTER OF: ) | |
| ) | |
| New England Medicine & Counseling Associates ) | |
| _____ ) | |

## SEALING ORDER

The United States of America, having applied to this Court for an Order sealing the underlying the application for *ex parte* orders pursuant to 42 U.S.C. § 290dd-2(b)(2)(c) and 42 C.F.R. §§ 2.66 and 2.67 (the "Application"), the supporting affidavit, proposed orders, the motion to seal, any resulting orders, including this Order, and all associated docket text entries for 180 days, expiring on July 5, 2023, and the Court finding good cause:

**IT IS HEREBY ORDERED**, that the underlying motion to seal, the Application, the supporting affidavit, proposed orders, any resulting orders, including this Order, and all associated docket text entries shall be filed under seal and remain sealed at Level II for a period of six months, expiring on July 5, 2023.

**DONE AND ORDERED** in chambers at Concord, in the District of New Hampshire, this _____ day of January, 2023.

_____
HONORABLE ANDREA K. JOHNSTONE
UNITED STATES MAGISTRATE JUDGE

1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

IN RE APPLICATION OF THE UNITED STATES )
)
1) )
FOR AN ORDER AUTHORIZING THE USE OF )
UNDERCOVER OPERATIONS IN FURTHERANCE )
OF A CRIMINAL INVESTIGATION and )        Case No:  23-mc-004-AJ
)
2) )
FOR AN ORDER OF DISCLOSURE AND )         **Filed Under Seal**
USE OF PATIENT RECORDS )
)
IN THE MATTER OF: )
)
New England Medicine & Counseling Associates )
)

## UNITED STATES' APPLICATION FOR AN *EX PARTE* ORDER AUTHORIZING THE USE OF UNDERCOVER OPERATIONS AND DISCLOSURE AND USE OF PATIENT SUBSTANCE ABUSE TREATMENT RECORDS IN A CRIMINAL INVESTIGATION

The Government, by and through Department of Justice Trial Attorneys, Patrick J. Queenan and Thomas D. Campbell, respectfully applies for an *ex parte* order pursuant to 42 U.S.C. §§ 290dd-2(b)(2)(c) and 42 C.F.R. §§ 2.66 and 2.67, for: (1) an order authorizing the use of undercover operations in furtherance of a criminal investigation; and (2) an order authorizing disclosure and use of patient records, to criminally prosecute a program or person holding the records, namely prescribing practitioners operating out of New England Medicine & Counseling Associates, with clinics located at: (i) 17 Coitview Drive, Newport, New Hampshire 03773; (ii) 376 South Willow Street, Manchester, New Hampshire 03103; and (iii) 40 Winter Street, Suite 308, Rochester, New Hampshire 03867 (collectively "New England Medicine").[1]   Those

---

[1] New England Medicine also has clinics located at: (i) 85 Prim Road, Suite 302, Colchester, Vermont 05446 (formerly at 10 East Street, Suite 1, Winooski, Vermont 05404); and (ii) 1384 Carl Broggi Hwy, Lebanon, Maine 04027.  The Government sought similar orders under 42 C.F.R. §§ 2.66 and 2.67 to

prescribers include Dr. Adnan S. Khan ("KHAN") and Dr. Steven W. Powell ("POWELL") (together, the "PRESCRIBING PRACTITIONERS").  The PRESCRIBING PRACTITIONERS are all addiction-medicine practitioners, who are authorized to treat office-based opioid addiction patients under the Drug Addiction Treatment Act of 2000 ("DATA").

Such practices and its patients are protected by statutory restrictions relating to the disclosure and use of alcohol and drug abuse patient records.  Accordingly, the Orders requested herein are needed to obtain material evidence in a criminal investigation.

Such practices and its patients are also protected from surveillance and the use of potential undercover operations in furtherance of that investigation, and a court order is required to further the criminal investigation into the PRESCRIBING PRACTITIONERS.

## I.    THE STATUTORY SCHEME FOR DISPENSING CONTROLLED SUBSTANCES FOR DETOXIFICATION AND MAINTENANCE TREATMENT

Under the provisions of the Controlled Substance Act ("CSA"), 21 U.S.C. §§ 801-971, the Drug Enforcement Administration ("DEA") registers medical practitioners who dispense narcotic drugs to individuals for "maintenance treatment or detoxification treatment," 21 U.S.C. §823(g). "Maintenance treatment" is defined as the "dispensing, for a period in excess of twenty-one days, of narcotic drugs in the treatment of an individual for dependence upon heroin or other morphine-like drugs." 21 U.S.C. § 802(29).  "Detoxification treatment" is defined as the "dispensing, for a period not in excess of one hundred and eighty days, of a narcotic drug in decreasing doses to an individual in order to alleviate adverse physiological or psychological effects incident to the

---

investigate New England Medicine's activity in the District of Vermont.  Those orders were issued on December 8, 2022.  This application seeks authority to conduct undercover operations and access patient files for only the New England Medicine locations in New Hampshire.

withdrawal from the continuous or sustained use of a narcotic drug and as a method of bringing the individual to a narcotic drug-free state within such period." 21 U.S.C. § 802(30).

The practitioner seeking such a registration must be qualified and abide by DEA statutes and regulations, as well as the statutes and regulations of the United States Department of Health and Human Services ("HHS"). 21 U.S.C. § 823(g)(1). Furthermore, the applicant must be qualified and willing to "comply with the standards established by the Secretary [of HHS] . . . respecting the quantities of narcotic drugs which may be provided for unsupervised use by individuals in such treatment." 21 U.S.C. § 823(g)(1)(C). In 2000, Congress passed DATA, Pub. L. No. 106-310, 114 Stat. 1222 (codified at 21 U.S.C. §823(g)). Under the DATA, Congress waived the requirements under section 823(g)(1) for practitioners who dispense and administer narcotic drugs in Schedule III, IV and V (but not Schedule II) for maintenance of detoxification treatment, subject to certain conditions. 21 U.S.C. § 823(g)(2)(A). Practitioners who obtain a waiver pursuant to section 823(g)(2) are known as "DATA-waived physicians" or office-based opioid treatment ("OBOT") physicians. Currently, the only controlled substance approved by the Food and Drug Administration ("FDA") for dispensing and administering by OBOT physicians to narcotic addicted patients is buprenorphine, the generic name for Suboxone and Subutex, a Schedule III controlled substance. 42 C.F.R. § 8.12(h)(2)(iii); 21 C.F.R. § 1308.13(e). In addition, the DATA limits the number of narcotic-addicted patients that can be treated at one time by an OBOT physician to 30, 100 or 275 patients. 21 U.S.C. § 823(g)(2)(B)(iii).

In this instance, POWELL and KHAN are each a DATA-waived medical professional who is authorized to treat up to 275 office-based opioid treatment patients pursuant to the requirements of section 823(g)(2).

There are restrictions upon the disclosure and use of alcohol and drug-abuse patient records "which are maintained in connection with the performance of any federally assisted alcohol and drug abuse program," 42 C.F.R. § 2.2, such as the one under which DATA-waived physicians operate. *See* 42 U.S.C. § § 290dd-2 and Code of Federal Regulations, Title 42, Ch. I Subch. A, Part 2, "Confidentiality of Alcohol and Drug Abuse Patient Records." Two of several exceptions to that confidentiality are: (1) the ability of law enforcement to obtain medical documentation relating to patients undergoing office-based opioid addiction treatment, and (2) the ability of law enforcement to seek a court order to place an undercover agent or informant in the practice. *See* 42 C.F.R. §§ 2.66 and 2.67. This application is for those orders. Because the standards for undercover operations and record disclosures are slightly different, they are discussed separately herein and separate orders are sought.

## II.    APPLICATION FOR UNDERCOVER OPERATIONS

Title 42 C.F.R. § 2.67(a) allows law enforcement to seek court authorization to place undercover agents or confidential sources in a drug-treatment program for investigative purposes if they have "reason to believe that employees or agents of the program are engaged in criminal misconduct." The Court should issue such order upon a showing of good cause. *Id.* at § 2.67(c). In order to find good cause, the Court must find that:

1) There is reason to believe that an employee or agent of the drug treatment program is engaged in criminal activity;

2) Other ways of investigating the criminal activity are not available or would be ineffective; and

3) The public interest and the need to place the undercover/confidential source in the treatment program outweigh the potential injury to the patients in the program, physician-patient relationships and the treatment services.

*Id.* The contents of such an Order are also prescribed. It must specifically authorize the placement of "an undercover agent or informant" in the program and limit such placement to twelve months unless a subsequent court order is obtained. *Id.* at § 2.67(d)(2). It must also prohibit such agent or informant from disclosing any patient-identifying information except "as necessary to criminally investigate or prosecute employees or agents of the program." *Id.* The Order should also include "any other measures which are appropriate to limit any potential disruption of the program" or breach of patient confidentiality. *Id.* The example of one such measure is sealing the record of any proceeding for which disclosure of a patient's record has been ordered. *Id.*

The Government is requesting an Order that contains all of the required elements and sealing of the matter. As part of the instant investigation and for the reasons described in the attached Affidavit (**Exhibit A**), it is necessary for law enforcement to send an undercover agent or confidential informant into practicing locations, to determine whether the doctors, the owner of the clinic and/or employees are violating criminal laws in their billing, handling, prescribing and distribution of Oxycodone, an opioid and Schedule II controlled substance; Suboxone (generic name Buprenorphine/Naloxone) and Subutex (generic name Buprenorphine), both of which are Schedule III controlled substances; and Klonopin, a benzodiazepine and Schedule IV controlled substance. When conducting substance-abuse investigations, obtaining material evidence from patients that are recovering drug addicts is difficult because, generally, substance-abuse patients do not want to cooperate with law enforcement by consenting to the use and disclosure of their patient records. Furthermore, patients will often notify the specific individuals being investigated of law enforcement's inquiries. As a result, use of an undercover agent of confidential human source is necessary. Such premature notification can have an adverse effect on the investigation. Additionally, without the use of an undercover agent or confidential human source, the government

may be unable to verify the veracity of the doctor's claims contained in patient medical records. Thus, other ways of obtaining the information are not available or would not be effective; and, as shown in the attached Affidavit (**Exhibit A**), the public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.

## <u>Notice and Opportunity for Hearing</u>

Generally, the applicant must give notice to the "program director" of this Application and an opportunity to appear and be heard, albeit for the limited purpose of "providing evidence on the statutory and regulatory criteria for the issuance of the court order." 42 C.F.R. § 2.67(b). However, notice and the opportunity to appear and be heard can be waived if "the application asserts a belief that:

    (1) The program director is involved in the criminal activities to be investigated by the undercover agent or informant; or

    (2) The program director will intentionally or unintentionally disclose the proposed placement of an undercover agent or informant to the employees or agents who are suspected of criminal activities." *Id.*

The "program director," as defined in 42 C.F.R. § 2.11, is the individual (if the program itself is an individual) or the individual designated as director, managing director or "otherwise vested with authority to act as chief executive of the organization" (if the program is an entity). Given the definitions of "program," also found in section 2.11, it appears that at least one of the PRESCRIBING PRACTITIONERS, each a DATA-waived physician operating out of New England Medicine, qualifies as a "program director" for purposes of 42 C.F.R. § 2.11. Since the attached Affidavit (**Exhibit A**) and this Application reveal suspicions that one or more of the PRESCRIBING PRACTITIONERS are involved in the criminal activities that are being investigated, it is likely that they will intentionally subvert the investigation and/or disclose the

proposed placement to any other individuals suspected of criminal activities.  The Government thus requests that such notice be waived.

### III.    APPLICATION FOR CONFIDENTIAL PATIENT RECORDS

Under 42 U.S.C. § 290dd-2(a), "records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted,  regulated or directly or indirectly assisted by any department or agency of the United States shall . . . be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section."

Under 42 U.S.C. § 290dd-2(b)(2(C), confidential records as described above in § 290dd-2(a), may not be disclosed to law enforcement personnel unless "authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefore . . . ."  That statute continues by explaining, "[i]n assessing good cause the court shall weigh the public interest and the need for disclosure against injury to the patient, the physician-patient relationship, and to the treatment services."

The United States must obtain an "order authorizing the disclosure or use of patient records to criminally or administratively investigate or prosecute a program or the person holding the records (or employees or agents of that program or person)."  42 C.F.R. § 2.66(a)(1).  Such an order "may be applied for by any administrative, regulatory, supervisory, investigative, law enforcement, or prosecutorial agency having jurisdiction over the program's or person's activities."  *Id.*  In this case, the applicant has jurisdiction to prosecute the criminal violations to be investigated.

Under 42 C.F.R. § 2.66(a)(2), "[t]he application may be filed separately or as a part of a pending civil or criminal action against a program or the person holding the records . . . in which it appears that the patient records are needed to provide material evidence."  A disclosure order "may be entered only if the court determines that good cause exists."  42 C.F.R. §§ 2.66(c) and 2.64(d).  To make this determination the Court must find that:

(1)  Other ways of obtaining the information are not available or would not be effective; and

(2)  The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.  *Id.*

Further, the content of a disclosure must: "(1) Limit disclosure to those parts of the patient's record which are essential to fulfill the objective of the order; (2) Limit disclosure to those persons whose need for information is the basis for the order; and (3) Include such other measures as are necessary to limit disclosure for the protection of the patient, the physician-patient relationship and the treatment services; for example, sealing from public scrutiny the record of any proceeding for which disclosure of a patient's record has been ordered."  42 C.F.R. § 2.64(e).  This application seeks a court order that fulfills all of the mandates of the applicable statutes and regulations as to disclosure of patient records and a sealing of this Application, Affidavit and Court Order.

As stated above, when conducting substance-abuse investigations, obtaining material evidence from patients that are recovering drug addicts is difficult because, generally, substance-abuse patients do not want to cooperate with law enforcement by consenting to the use and disclosure of their patient records.  Furthermore, patients will often notify the specific individuals being investigated of law enforcement's inquiries.  Such premature notification can have an adverse effect on the investigation.  Thus, other ways of obtaining the information are not available or would not be effective; and, as shown in the attached Affidavit (**Exhibit A**), the public interest

8

and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.

## Notice and Opportunity for Hearing

An application for patient records for a criminal investigation may be granted without notice in the Court's discretion, 42 C.F.R. § 2.66(b).  In this case, notice should not be given of the request to seek patient records as such notice is inconsistent during a proposed undercover operation in a criminal investigation.  Notice of the application may result in the destruction, removal or tampering with patient records.  The United States thus requests that no notice of the application be given.

Although no express notice is required "to the program, to the person holding the records, or to any patient whose records are to be disclosed," each of those must be given the opportunity to seek revocation or amendment of the order.  42 C.F.R. § 2.66(b).  That opportunity does not arise, however, until the Order is implemented. *Id.* So, for example, if the United States proceeds with the undercover investigation and issues Grand Jury subpoenas and/or arrives at the point that it believes it has probable cause to seek a search warrant[2] for patient records, the Order being requested now would be "implemented" at that time.  As with the hearing for the undercover operation, the opportunity afforded is only to "seek revocation or amendment of that order, limited to the presentation of evidence on the statutory and regulatory criteria for the issuance of the court order." *Id.*

---

[2] Even a Grand Jury subpoena would require an order like the one currently being requested.

IV.    **REQUESTED ORDERS**

In order to conduct the investigation, the United States is requesting two orders from this Court: one authorizing an undercover investigation as contemplated by 42 C.F.R. § 2.67 and one authorizing the disclosure and use of patient records as contemplated by 42 C.F.R. § 2.66.

A.  Order Authorizing Undercover Investigation

Based on the facts summarized herein and set forth more particularly in the attached Affidavit (**Exhibit A**), there is reason to believe that employees or agents of New England Medicine are engaged in criminal misconduct, 42 C.F.R. § 2.67(a) and (c).  There is good cause to issue the orders, because other ways of investigating the criminal activity are not available or would be ineffective, and the public interest and the need to place the undercover/confidential source in the treatment program outweigh the potential injury to the patients in the program, physician-patient relationships and the treatment services.  *See* 42 C.F.R. § 2.67(c).  The proposed Order (**Exhibit B**) incorporates the required contents as set forth in 42 C.F.R. § 2.67(d).

Further, no notice should be given to the "program director" because it is believed that such person or persons are either involved in the criminal activities or will intentionally or unintentionally disclose the proposed undercover investigation to suspects.  42 C.F.R. § 2.67(b)(1) and (2).

Accordingly, the United States requests that the proposed Order (**Exhibit B**) be granted and that this Application, its supporting Affidavit and the Court's Order be sealed until further order of this Court.

B.  Order Authorizing Disclosure and Use of Patient Records

Because the applicant is a law enforcement or prosecutorial agency having jurisdiction of the potential crimes being investigated and because the records are needed to provide material

evidence, this Court should issue the proposed Order (**Exhibit C**) for disclosure and use of patient records, 42 C.F.R. § 2.66(a)(1) and (2).   There is good cause to issue the proposed Order (**Exhibit C**) since other ways of investigating the criminal activity are not available or would be ineffective, and the public interest and the need to place the undercover/confidential source in the treatment program outweigh the potential injury to the patients in the program, physician-patient relationships and the treatment services.   *See* 42 C.F.R. §§ 2.66(c) and 2.64(d).   The proposed Order (**Exhibit C**) incorporates the required contents as set forth in 42 C.F.R. §§ 2.66(c) and 2.64(e).

Records may be in the custody of state or federal agencies or private insurance companies, any one of which may pay for prescriptions or treatment; boards or other administrative agencies with oversight of the Suboxone program or physicians generally; third party billing companies; the PRESCRIBING PRACTITIONERS, and any employees or contractors thereof; or patients themselves.   The records may contain evidence of diversion of buprenorphine, identify victims of the crimes being investigated, and identify witnesses.   The Order will be disclosed to the appropriate party each time it is implemented, so that the appropriate party has an opportunity to seek revocation or amendment as limited by regulation.   42 C.F.R. § 2.66(b).   Other than that disclosure, the United States is not required to give notice and requests that this Application, its supporting Affidavit, and the Court's Order be sealed until further order of this Court.

Further, disclosure of the records will be limited to employees of the DEA, the Vermont Board of Pharmacy, the Vermont Medical Board, the Vermont Office of Professional Regulation, the Vermont Attorney General's Medicaid Fraud & Residential Abuse Unit, the State of Vermont Drug Task Force, New Hampshire Department of Justice – Medicaid Fraud Control Unit, New Hampshire State Medical Board, New Hampshire State Nursing Board, New Hampshire State

Pharmacy Board, State of Maine Fraud Investigation and Recovery Unit, Maine Board of Licensure in Medicine, Maine Board of Pharmacy, Maine Board of Osteopathic Licensure, Federal Bureau of Investigation ("FBI"), United States Health and Human Service – Office of Inspector General ("HHS-OIG"), the United States Department of Justice – Criminal Division – Fraud Section, the United States Attorney's Offices for the Districts of New Hampshire, Vermont, and Maine, and/or any other federal or state law enforcement personnel, and retained experts whose need for this information is the basis of this request, federal Grand Juries, and other essential court personnel, in compliance with 42 C.F.R. § 2.64(e)(2).  The Government will also maintain control of the medical records as required by all relevant regulations and statutes.  No information obtained pursuant to this request will be used to conduct any investigation or prosecution of a patient for seeking treatment for drug addiction, nor will it be used as the basis for an order under 42 C.F.R. § 2.65, in accordance with 42 C.F.R. § 2.66(d)(2).

Any patient identifying information, as defined in 42 C.F.R. § 2.11, will be deleted from any documents made available to the public, in accordance with 42 C.F.R. § 2.66(d) (1), absent further order of this Court or appropriate waivers or consents.

### <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should grant the attached proposed Orders (**Exhibits B–C**).

Respectfully submitted,

JANE E. YOUNG
UNITED STATES ATTORNEY

By: */s/ Thomas Campbell*
    Thomas D. Campbell (MA Bar #703271)
    Patrick J. Queenan (NH Bar #20127)
    Trial Attorneys
    U.S. Department of Justice
    Criminal Division, Fraud Section
    1400 New York Avenue, NW
    Washington, DC 2005
    Telephone: (202) 875-0326
    Thomas.Campbell@usdoj.gov
    Patrick.Queenan@usdoj.gov

EXHIBIT A

**AFFIDAVIT IN SUPPORT OF THE UNITED STATES' APPLICATION FOR *EX PARTE* ORDERS AUTHORIZING THE USE OF UNDERCOVER OPERATIONS AND DISCLOSURE AND USE OF PATIENT SUBSTANCE ABUSE TREATMENT RECORDS**

Special Agent, Robert Ames, being duly sworn, deposes and says:

## I.    INTRODUCTION AND AGENT BACKGROUND

1.      I, Robert Ames, am a Special Agent with the Department of Health and Human Services, Office of Inspector General ("HHS-OIG"), Boston Regional Office.  I have been employed in this capacity since December 2021.  I am presently assigned to investigate a wide variety of health care fraud matters, including schemes to defraud Medicare and Medicaid.  In this capacity, I am authorized to conduct investigations into criminal violations committed against the United States, including, but not limited to the illegal prescribing and dispensing of controlled substances, health care fraud, payment and receipt of illegal health care kickbacks, making false statements in connection with a health care benefit program, money laundering, and related conspiracies.  I have received basic criminal investigator training regarding interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer crimes, and various other criminal law procedures as well as specialized training and experience investigating fraud related to the United States health care system.

2.      Prior to my employment with HHS-OIG, I was employed as a Digital Evidence Analyst with the Digital Evidence Laboratory of the Massachusetts Attorney General's Office.  I was employed in that capacity for approximately six months and assigned to assist the Massachusetts State Police in the execution of search warrants.  As a Digital Evidence Analyst, I preserved, documented, processed, and forensically analyzed digital evidence and media for a

1

variety of criminal matters, including human trafficking, tobacco and drug, assault, and Medicaid fraud investigations.

    3.    Prior to my employment with the Digital Evidence Laboratory, I was employed as an Investigator and subsequently a Senior Health Care Fraud Investigator with the Massachusetts Attorney General's Office Medicaid Fraud Division.  I was employed in that capacity for nine and a half years and was assigned to investigate allegations of fraud, waste, and abuse in the Massachusetts Medicaid program.  As a Senior Investigator, I conducted complex data analyses, prepared and served records requests and subpoenas, participated in the execution of search warrants, reviewed and analyzed medical, financial, and other types of documents, performed surveillance operations, interviewed witnesses and suspects, presented findings to Assistant Attorneys General, testified in Grand Jury, and prepared cases for trial.

    4.    HHS-OIG, along with the Federal Bureau of Investigation ("FBI"), Drug Enforcement Administration ("DEA"), and the Department of Justice, Criminal Division ("DOJ"), are investigating medical practitioners, including Dr. Adnan S. Khan ("KHAN") and Steven W. Powell ("POWELL"), for violations of federal law, including violations of 21 U.S.C. § 841(a)(1) (illegal drug distribution) and 18 U.S.C. § 1347 (health care fraud) related to their practice at New England Medicine & Counseling Associates, with locations at: (i) 85 Prim Road, Suite 302, Colchester, VT 05446 (formerly at 10 East Street, Suite 1, Winooski, Vermont 05404); (ii) 17 Coitview Drive, Newport, NH 03773; (iii) 376 South Willow Street, Manchester, NH 03103; and (iv) 1384 Carl Broggi Hwy, Lebanon, ME 04027 (collectively "New England Medicine"), as well as any affiliated clinics.

5.       New England Medicine registered with the New Hampshire Department of State on May 6, 2016, Business ID # 743884.  According to New Hampshire Secretary of State records, KHAN is listed as the business' Manager.

6.       New England Medicine is registered with the Vermont Secretary of State as a Foreign Professional Limited Liability Company, Business ID # 0324546, with its date of incorporation as November 14, 2016.

7.       KHAN is a licensed Medical Doctor with a specialty in Family Medicine.  KHAN currently has an active DEA registration number in Vermont, DEA # FK5479628, and New Hampshire, DEA # BK9238494.  KHAN is DATA-waived and authorized to treat up to 275 patients for addiction treatment.

8.       KHAN holds active medical licenses in Vermont and New Hampshire.  He is enrolled as a provider in both the Medicare and Medicaid health care benefit programs in both of those states, enrolling with Medicare in Vermont in December 2016 and in New Hampshire in July 2007.

9.       POWELL is a licensed Medical Doctor with a specialty in Addiction Treatment. POWELL has an active DEA registration in a number of states including Vermont, DEA # FP5423986, and New Hampshire, DEA # FP0390144, and is also DATA-waived and authorized to treat up to 275 patients for addiction treatment.  Powell enrolled with Medicare in Vermont in September 2007 and in New Hampshire in October 2009.

10.      POWELL is currently actively enrolled with Medicare to see Medicare beneficiaries in 20 states: Arkansas, Colorado, Connecticut, Delaware, Florida, Kentucky, Maine, Maryland, Massachusetts, Michigan, Mississippi, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, Vermont, and West Virginia.  Besides his Medicare

enrollments in New Hampshire and Vermont, discussed above, POWELL registered with the remaining eighteen states between October 2018 and March 2022.

11.    POWELL is listed as a signatory on New England Medicine's business banking account with Sugar River Bank, as well as New England Medicine's business account with Citizens Bank.

12.    With his DATA-waiver authorization, POWELL can treat up to 275 addiction-recovery patients in total, across those twenty states.

## II.    PREVIOUS STATE INVESTIGATIONS INTO KHAN AND POWELL

### KHAN's Monitoring Agreement with the New Hampshire Board of Medicine

13.    In September 2016, KHAN entered into a settlement agreement with the State of New Hampshire Board of Medicine that restricted his ability to practice in Emergency Room settings, after he failed to diagnose and treat a patient with Lyme disease while practicing at an Emergency Room in New London, New Hampshire.  As a condition of that settlement, KHAN had to work under the supervision of another doctor.  KHAN informed the New Hampshire Board of Medicine that he would be monitored by POWELL.  However, KHAN neglected to inform the Medical Board that POWELL was actually employed by KHAN at New England Medicine at that time.  According to the New Hampshire Board of Medicine's Physician Investigator, "In looking at the timing of when Dr. Powell took on the mentorship and the timing of the new practice, it was about the same time as the practice was opened and when Dr. Powell became an employee in the practice . . . ."  In fact, according to banking records from Sugar River Bank, KHAN and POWELL are business partners, with numerous joint bank accounts including the business account for New England Medicine.

### Notices From the Vermont Program Integrity Unit

14.     In May 2017, the Department of Vermont Health Access Program Integrity Unit ("the Vermont PIU") sent a "Deficient Practice" notice letter to KHAN, informing him that he was inappropriately charging cash payments for visits with patients who were Medicaid beneficiaries. KHAN did not respond.

15.     In June 2017, the Vermont PIU sent a "Consideration of Sanction" notice to KHAN, informing him that, if he did not respond to the previous "Deficient Practice" notice, he could face sanctions, including exclusion or suspension of his enrollment in the Medicaid program.  KHAN again did not respond.  As of the date of this application, KHAN remains enrolled in both Medicare and Medicaid.

16.     From my training and experience, I know that it is a flag suggestive of prescribing controlled substances outside of the usual course of medical practice for a provider to charge cash payments for office visits, instead of billing insurance.  Specifically, according to the provider notice sent to KHAN in May 2017, "All services received by Medicaid beneficiaries by a Medicaid provider are to be billed to the State of Vermont Medicaid program.  Per the signed Provider Agreement . . . there is to be compliance with the providing of and billing of services received by a Medicaid patient."

Investigations by the New Hampshire and Vermont Boards of Medicine

17.     On October 27, 2017, the New Hampshire Office of Professional Licensure and Certification sent two notices to KHAN regarding two investigations being undertaken by the Medical Review Subcommittee of the New Hampshire Board of Medicine.

18.     The first notice informed KHAN that the New Hampshire Board of Medicine was investigating his inappropriate dispensing of Ketamine out of his offices.  According to that notice, KHAN's use of Ketamine was inappropriate for four reasons: (1) the Ketamine was not part of an

emergency therapy; (2) the Ketamine was not prepared under the appropriate sterile conditions; (3) the Ketamine was, in at least one instance, provided to a patient for more than an hour; and (4) the Ketamine was prepared by someone not authorized to prepare intravenous drugs in an office setting.

19.    The second notice informed KHAN that the New Hampshire Board of Medicine was conducting its own investigation into KHAN's practice, after receiving information from the Vermont Board of Medical Practice.  Specifically, the Vermont Board of Medical Practice "raised concerns" to the New Hampshire Board of Medicine, claiming: (1) that KHAN required his patients to pay him in cash before he would write them a prescription for a controlled substance; (2) that KHAN had an inappropriate "taper policy," where patients' prescriptions would be tapered down if a patient was late to an appointment or failed to attend an appointment; (3) that KHAN did not verify his patients' medications with other providers; (4) that KHAN was selling products out of his clinic for profit; (5) that KHAN was inappropriately prescribing Buprenorphine 32mg, instead of the maximum recommended Buprenorphine 24mg; (6) that KHAN was writing prescriptions to patients that he had not treated; and (7) that KHAN was inappropriately prescribing controlled substances to pregnant patients.

20.    In February 2019, KHAN was informed that the Vermont Board of Medicine and New Hampshire Medical Board had determined that no further action was warranted.  According to a Report of Investigation memorializing that decision, that decision was based primarily on the representations made by KHAN and POWELL in their responses to the Medical Boards.

21.    Specifically, the Reviewer's Assessment notes, "This is an unusual R[eport] O[f] I[nvestigation] as the evaluation of the allegations is based *only on the evidence presented by the licensees*." (emphasis added).

22.     In his response to the Medical Boards, KHAN claimed that he was not accepting cash-only payments for prescriptions, but that forty-two percent of KHAN's patients did not have insurance.  KHAN's claim to the Medical Boards is not substantiated in an aggregate analysis of the Medicare and Medicaid claims data, discussed more fully below.

III.     **PRESENT PRESCRIBING PRACTICES**

Adnan KHAN

23.     According to a review of all claims submitted on behalf of KHAN to Medicare and Medicaid between January 2019, and September 20, 2022, KHAN has tens of thousands of claims for prescriptions under Medicare and Medicaid, meaning that those patients are in fact insured through those programs.  But, out of those tens of thousands of prescriptions claims, there is only a handful of corresponding claims for in-person office visits.  From my training and experience I know that it would be standard medical practice to see a corresponding claim for an office visit in the data for each prescription.  The fact that KHAN appears as the prescribing provider for prescriptions, without a corresponding claim for an office visit in the data, is a red flag suggestive of the distribution of controlled substances outside of the usual course of medical practice as it suggests that KHAN is either not seeing patients before writing prescriptions for controlled substances or is not billing insurance companies for patient visits.  Additionally, the data suggests that contrary to KHAN's assertion to the Medical Board, his patients have insurance, but that he is not accepting insurance for their office visits, meaning that he is likely accepting cash-only payment.

24.     It is difficult to assess the truthfulness of KHAN's other assertions in his response to the Medical Boards without access to his patient records.  For example, KHAN told the Medical Boards that patients were treated in group therapy sessions and that those who arrived late were

penalized and made to attend one-on-one therapy sessions (contrary to the "taper policy" that was advertised in notices throughout KHAN's office). Without access to KHAN's patient records or the ability to use a confidential informant, it is difficult to verify whether KHAN is providing any group therapy, as he claimed to the Medical Board.

25.     Members of the Vermont Medicaid Fraud and Residential Abuse Unit interviewed a Source of Information ("SOI #1") on June 9, 2021, in Winooski, Vermont. SOI #1 is a resident of and property manager in Winooski. During an interview concerning a separate criminal matter, SOI #1 spontaneously discussed KHAN and his own observations of KHAN's business. At that time, New England Medicine had an office located in Winooski. According to SOI #1, KHAN operated a cash-only business in Winooski, with patients paying hundreds of dollars per visit. SOI #1 told agents that KHAN treated hundreds of people in a single day when he first opened. SOI #1 also believed that KHAN was only seeing patients for roughly 15 minutes. At that time, KHAN only worked at the Winooski office on Saturdays and Sundays.

26.     Additionally, a review of Medicare and Medicaid claims submitted by KHAN between January 1, 2019 and September 20, 2022, provides good cause to believe that KHAN is operating a cash-only business, a red flag suggesting that KHAN is prescribing controlled substances outside of the usual course of professional practice.

27.     Specifically, between January 1, 2019 and September 20, 2022, KHAN submitted *only four claims* on behalf of two Medicare beneficiaries and *only three claims* for office visits on behalf of three Medicaid beneficiaries. From my training and experience, I know that, if a medical professional were listed as the prescribing provider for a prescription billed to insurance, under Medicare Part D, for example, it would be standard medical practice for there to also be an associated charge for a visit with that patient, under Medicare Part B, for example, during which

the medical professional would have made the determination that a prescription for a controlled substance was necessary.

28.     Despite those incredibly low Medicare and Medicaid claims for reimbursement for in-person visits, KHAN is listed as the prescribing physician for approximately *1,668 prescriptions* reimbursed by Medicare and for approximately *13,121 prescriptions* reimbursed by Medicaid.  For those claims, Medicare paid over $150,000 and Medicaid paid over $1.1 million.  From my training and experience, I know that it is a red flag suggestive of illegal drug distribution for a medical practitioner to write a prescription for a patient without submitting a corresponding claim to insurance for an in-person visit with the beneficiary, as it suggests that the practitioner is either (1) accepting inappropriate cash payments in exchange for prescriptions, such that there would be no record of an insurance claim or (2) writing prescriptions to patients without the required corresponding visit.

29.     The data additionally suggests that KHAN's patients are insured through Medicare and Medicaid, since they bill those insurance programs for their prescriptions, but that they do not bill their insurance for office visits with KHAN.

30.     Additionally, according to the Medicare and Medicaid claims data, 1,600 of the 1,668 prescriptions written by KHAN and reimbursed by Medicare (or roughly ninety-five percent) and 13,116 of the 13,121 prescriptions written by KHAN reimbursed by Medicaid (or roughly ninety-nine percent) were for opioid partial agonists, such as buprenorphine.  From my training and experience, as well as information conveyed to me by the investigative team, I know that an opioid agonist binds with the opioid receptors in the brain, which causes reduced pain and feelings of wellbeing.  While opioid agonists, such as buprenorphine, are not opioids, they act like one, causing moderate receptor site activity.  When taken in dosages as directed, opioid agonists

are not intended to create a euphoric state. Due to the prescriptions for buprenorphine discussed above and based on a review of claims submitted to Medicare and Medicaid, KHAN is among the top buprenorphine prescribers, for both Medicare and Medicaid, among all prescribers in Vermont, New Hampshire, and Maine.

31.     Additionally, between January 2019 and January 2022, KHAN was also listed as the referring physician for over $550,000 in urinary drug testing claims submitted by a laboratory in Eastern Pennsylvania. From my training and experience, I know that the fact that KHAN is referring urine samples for drug testing to a lab in Eastern Pennsylvania, but is not submitting corresponding claims for reimbursement for in-person visits to Medicare and Medicaid, suggests that KHAN is only accepting cash for visits in exchange for prescriptions.

32.     A review of New England Medicine & Counseling's banking records with Citizens Bank also suggests that the practice is accepting cash payments from patients, instead of charging Medicare or Medicaid. For example, in July 2022, there was a deposit from Merchant Services, a credit card processing company, for all but one business day, as well as ATM deposits. These deposits were as large as approximately $12,353.51 in a single day. Meanwhile, there were only three deposits from insurance companies into that same account, all made by Cigna for between $3 and $83.95. KHAN and POWELL are both included as signers on that Citizens Bank business account.

33.     The Medicare data also suggests that KHAN wrote prescriptions that were funded under Medicare Part D to 64 patients with whom he did not have any previous Medicare claims for treatment under Medicare Parts A, B or C. In other words, the Medicare data indicates that KHAN was the referring provider for 64 Medicare beneficiaries with whom he did not have any prior doctor-patient relationship. Based on my training and experience, I know that this is an

additional red flag indicative of illegal prescribing practices, as it suggests that KHAN is writing prescriptions to patients that he has not evaluated.

### Steven POWELL

34.     According to a review of Medicaid claims submitted between January 1, 2018, and June 16, 2022, POWELL was listed as the ordering physician for 317 Medicaid beneficiaries, for a total of over $2 million billed to Medicaid for prescription drugs.  Of those 317 Medicaid patients, 312 received an opiate partial agonist.  This suggests that POWELL may be exceeding his DATA-waived limit of treating 275 patients for addiction treatment.

35.     Of the over $2 million billed to Medicaid for prescriptions written by POWELL, $1.9 million was for those opiate partial agonists discussed above.

36.     A similar review of claims submitted to Medicare for prescriptions written by POWELL suggests that POWELL may be inappropriately prescribing Subutex.  The top drug prescribed by POWELL to Medicare beneficiaries is buprenorphine (also known as Subutex), with 1,544 claims submitted to Medicare for that drug.  By comparison, POWELL's second-most-prescribed drug is buprenorphine with naloxone (also known as Suboxone), with 227 claims submitted to Medicare.  From my training and experience, I know that naloxone is an opioid antagonist, which blocks the effects of opioids at the receptor site.  As a result, Subutex is more prone to be abused or diverted than Suboxone.

37.     The Medicare data also may indicate that POWELL wrote prescriptions that were funded under Medicare Part D to 219 patients with whom he did not have any previous Medicare claims for treatment under Medicare Parts A, B, or C.  Based on my training and experience, this data suggests that POWELL does not have a prior doctor-patient relationship with these patients, which is an additional red flag indicative of illegal prescribing practices because it suggests that

POWELL is writing prescriptions to patients that he has not treated.

## IV.    <u>**CONCLUSION**</u>

38.    Based on these allegations and other information obtained during the course of the investigation, the government (through the DEA, FBI, DOJ, and HHS-OIG) has opened an investigation into KHAN and POWELL for violations of federal law, including violations of 21 U.S.C. § 841(a) (1) (illegal drug distribution) and 18 U.S.C. § 1347 (health care fraud).


_____
Robert Ames
Special Agent
Department of Health and Human Services,
Office of Inspector General




Subscribed and sworn to before me

This _____day of January, 2023.



_____
HONORABLE ANDREA K. JOHNSTONE
UNITED STATES MAGISTRATE JUDGE

EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| IN RE APPLICATION OF THE UNITED STATES | ) | |
| | ) | Case No: |
| FOR AN ORDER AUTHORIZING THE USE OF | ) | |
| UNDERCOVER OPERATIONS IN FURTHERANCE | ) | **Filed Under Seal** |
| OF A CRIMINAL INVESTIGATION | ) | |
| | ) | |
| IN THE MATTER OF: | ) | |
| | ) | |
| New England Medicine & Counseling Associates | ) | |
| | ) | |

## <u>ORDER AUTHORIZING UNDERCOVER OPERATIONS</u>

This matter is before the Court on the Government's application, pursuant to 42 U.S.C. §§ 290dd-2(b)(2)(C) and 42 C.F.R. § 2.67, for an *ex parte* order authorizing undercover operations to criminally investigate or prosecute prescribing practitioners operating out of New England Medicine & Counseling Associates, with locations in New Hampshire at: (i) 17 Coitview Drive, Newport, New Hampshire 03773; (ii) 376 South Willow Street, Manchester, New Hampshire 03103; and (iii) 40 Winter Street, Suite 308, Rochester, New Hampshire 03867 (collectively "New England Medicine"). Those prescribers include Dr. Adnan S. Khan ("KHAN") and Dr. Steven W. Powell ("POWELL") (together, the "PRESCRIBING PRACTITIONERS"). The PRESCRIBING PRACTITIONERS are all addiction-medicine practitioners, who are authorized to treat office-based opioid addiction patients under the Drug Addiction Treatment Act of 2000 ("DATA").

The Government has asserted a reason to believe that employees or agents of those programs are engaged in criminal misconduct as required by 42 C.F.R. § 2.67(a).

1

The Court finds good cause as required in 42 C.F.R. § 2.67(c) for such Order for the following reasons:

1.    There is reason to believe that an employee or agent of the program is engaged in criminal activity;

2.    Other ways of obtaining evidence of this criminal activity are not available or would not be effective; and

3.    The public interest and need for the placement of an undercover agent or informant in the program outweigh the potential injury to patients of the program, physician-patient relationships and the treatment services.

IT IS THEREFORE ORDERED that the Government's Application for an Order authorizing undercover operations at New England Medicine and any associated clinics be GRANTED for a period of six months and prohibits the undercover agent or informant from disclosing any patient identifying information obtained from the placement except as necessary to criminally investigate or prosecute employees or agents of the program;

IT IS FURTHER ORDERED that the Government shall refrain from using any information obtained under this Order to conduct any investigation or prosecution of a patient, or as the basis for an application for an order under 42 C.F.R. § 2.65, in compliance with 42 C.F.R. § 2.67(e).

IT IS FURTHER ORDERED that no notice should be given to the program director concerning the undercover operation because the program director may be involved in the criminal activities to be investigated or may intentionally or unintentionally disclose the proposed placement of an undercover agent or informant to those being investigated.  *See* 42 C.F.R. § 2.67(b)(1) and (2).

IT IS FURTHER ORDERED that the Application, Affidavit in Support and this Order are sealed until further order of this Court.

Dated at Concord, in the District of New Hampshire, this _____ day of January , 2023.


_____
HONORABLE ANDREA K. JOHNSTONE
UNITED STATES MAGISTRATE JUDGE

3

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| IN RE APPLICATION OF THE UNITED STATES | ) | |
| | ) | Case No: |
| FOR AN ORDER OF DISCLOSURE AND | ) | |
| USE OF PATIENT RECORDS | ) | **Filed Under Seal** |
| | ) | |
| IN THE MATTER OF: | ) | |
| | ) | |
| New England Medicine & Counseling Associates | ) | |
| | ) | |

## ORDER FOR DISCLOSURE AND USE OF PATIENT RECORDS

This matter is before the Court on the Government's application, pursuant to 42 U.S.C. §§ 290dd-2(b)(2)(C) and 42 C.F.R. § 2.66, for an *ex parte* order authorizing the disclosure and use of patient records to criminally investigate or prosecute prescribing practitioners operating out of New England Medicine & Counseling Associates, with locations in New Hampshire at: (i) 17 Coitview Drive, Newport, New Hampshire 03773; (ii) 376 South Willow Street, Manchester, New Hampshire 03103; and (iii) 40 Winter Street, Suite 308, Rochester, New Hampshire 03867 (collectively "New England Medicine"). Those prescribers include Dr. Adnan S. Khan ("KHAN") and Dr. Steven W. Powell ("POWELL") (together, the "PRESCRIBING PRACTITIONERS"). The PRESCRIBING PRACTITIONERS are all addiction-medicine practitioners, who are authorized to treat office-based opioid addiction patients under the Drug Addiction Treatment Act of 2000 ("DATA").

The Government has asserted that the records are needed to criminally or administratively investigate or prosecute a program or the person holding records or agents or employees of a program involved in the treatment of drug addicted patients with Suboxone and/ or Subutex and that it has jurisdiction over the program's or person's activities.  In compliance with 42 C.F.R. § 2.66(a)(2), the application refers to any patient using a fictitious name to anonymize the patient and does not contain or otherwise disclose any potential identifying information.

For good cause shown, the Court finds that:

(1) Other ways of obtaining the information are not available or would not be effective; and

(2) The public interest and need for the disclosure outweigh the potential injury to patients of the program, the physician-patient relationship and the treatment services.

IT IS THEREFORE ORDERED THAT the Government's Application for an Order of Disclosure and Use of Patient Records to Investigate or Prosecute a Program or the Person Holding the Records is GRANTED as to the practice at New England Medicine and any associated clinics.

IT IS FURTHER ORDERED that the Government shall:

(1)    Limit disclosure to those parts of the patients' records which are essential to fulfill the objective of this order;

(2)    disclosure of the records will be limited to employees of the DEA, the Vermont Board of Pharmacy, the Vermont Medical Board, the Vermont Office of Professional Regulation, the Vermont Attorney General's Medicaid Fraud & Residential Abuse Unit, the State of Vermont Drug Task Force, New Hampshire Department of Justice – Medicaid Fraud Control Unit, New Hampshire State Medical Board, New Hampshire State Nursing Board, New Hampshire State Pharmacy Board, State of Maine Fraud Investigation and Recovery Unit, Maine Board of Licensure in Medicine, Maine Board of Pharmacy, Maine Board of Osteopathic Licensure, Federal

Bureau of Investigation ("FBI"), United States Health and Human Service – Office of Inspector General ("HHS-OIG"), the United States Department of Justice – Criminal Division – Fraud Section, the United States Attorney's Offices for the Districts of New Hampshire, Vermont, and Maine, and/or any other federal or state law enforcement personnel, and retained experts whose need for this information is the basis of this request, federal Grand Juries, and other essential court personnel, in compliance with 42 C.F.R. § 2.64(e)(2).

(3)     Delete patient identifying information from any documents made available to the public, in compliance with 42 C.F.R. § 2.66(d)(1).

(5)     Refrain from using any information obtained under this Order to conduct any investigation or prosecution of a patient, or as the basis for an application for an order under 42 C.F.R. § 2.65, in compliance with 42 C.F.R. §§ 2.66(d)(2).

IT IS FURTHER ORDERED that this Order will be disclosed to the appropriate party each time it is implemented so that the appropriate party (the program, the person holding the records or the patient whose records are to be disclosed) has an opportunity to seek revocation or amendment of this Order, limited to the presentation of evidence on the statutory and regulatory criteria for the issuance of the Court Order as required by 42 C.F.R. § 2.66(b).

IT IS FURTHER ORDERED that except as set forth above, no notice of this Order need be given.

IT IS FURTHER ORDERED that the Application, Affidavit in Support and this Order are sealed until further order of this Court, except that copies of this Order may be disseminated as set forth in this Order.

Dated at Concord, in the District of New Hampshire, this _____ day of January, 2023.

                                                 _____

HONORABLE ANDREA K. JOHNSTONE
UNITED STATES MAGISTRATE JUDGE